```
              UNITED STATES DISTRICT COURT

              SOUTHERN DISTRICT OF OHIO

                   EASTERN DIVISION


COURTHOUSE NEWS SERVICE,         )
                                 )
     PLAINTIFF,                  ) CASE NO. 2:22-cv-2471
                                 )
              vs.                )
                                 )
MARYELLEN O'SHAUGNESSY in her    )
   Official Capacity as Clerk of )
   the Franklin County Court of  )
   Common Pleas,                 )
                                 )
   DEFENDANT.                    )
_____)


    TRANSCRIPT OF INFORMAL PRELIMINARY MOTION CONFERENCE
         BEFORE THE HONORABLE SARAH D. MORRISON
           TUESDAY, JUNE 21, 2022; 1:55 P.M.
                     COLUMBUS, OHIO

FOR THE PLAINTIFF:
    Graydon Head & Ritchey LLP
    By:  JOHN C. GREINER, ESQ.
    312 Walnut Street
    Suite 1800
    Cincinnati, Ohio 45202

FOR THE DEFENDANT:
    Isaac Wiles Burkholder & Teetor, LLC
    By:  MARK D. LANDES, ESQ.
    AARON M. GLASGOW, ESQ.
    Two Miranova Place, Suite 700
    Columbus, Ohio 43215

                         - - -
    Proceedings recorded by mechanical stenography,
transcript produced by computer.
```

*Allison A. Kimmel, FAPR, RDR, CRR, CRC*
*Federal Official Court Reporter*
*85 Marconi Boulevard*
*Columbus, Ohio 43215*
*614.719.3225*

2

Tuesday Afternoon Session

June 21, 2022

- - -

*In chambers conference room:*

THE COURT: We're here for an informal conference pursuant to Local Rule 65.1 in the Matter of Courthouse News Service versus MaryEllen Shaughnessy in her official capacity as Clerk of the Franklin County Court of Common Pleas, Case No. 22-cv-2471.

If counsel will enter their appearances.

MR. GREINER: I am Jack Greiner. I represent Courthouse News Service.

MR. LANDES: I'm Mark Landes. I'm here for the defense with my colleague.

MR. GLASGOW: Aaron Glasgow.

THE COURT: Good afternoon.

As I said, we are here pursuant to our local rule on your motion for preliminary injunction. I did review the motion. I know defense counsel has had some time to review it and get caught up to speed.

So, I guess, let's talk in a broad sense. Why don't you tell me a little bit about your motion. I have read it, but go ahead and tell me a little bit more about it.

MR. GREINER: Courthouse News Service is a reporting service that issues -- that does a lot of things, but one of

3

1  its key products is its court -- court reports that come out at
2  the end of each day, and it covers basically civil complaints
3  with the exception of no divorces, no evictions, and a few
4  other things.
5          But lawyers subscribe to it. Businesses subscribe to
6  it. I imagine you guys probably do. Most firms do. And you
7  can take a look at this and scroll down and see, you know, what
8  new cases have been filed.
9          So it's important for Courthouse News to have access to
10 complaints as soon as possible and, ideally, on the day they
11 are filed.
12         For many years, Courthouse News had that kind of
13 same-day access, ironically, I guess, when the filings were
14 done in paper because what would happen would be the lawyers
15 would come and have the complaint and have a couple extra
16 copies, and one of those extra copies immediately went into the
17 press bin and so that the press had access to that copy of the
18 complaint.
19         When Franklin County switched to electronic filing
20 several years ago, that same-day access really went away
21 because the clerk took the position that there needed to be
22 processing of the complaint and that the public was not
23 entitled to see the complaint until the processing was
24 completed.
25         And so, effectively, the complaint -- even though it had

4

1   already been submitted to the clerk and we think at that moment
2   became a public document -- was sealed effectively for however
3   long it took to do the processing.
4           And we have statistics.  Our client did a statistical
5   analysis from January 1st, 2022, through May 31st of 2022
6   demonstrating that same-day access was in at least the
7   7 percent range.  So 93 percent, more or less, of the
8   complaints were not available the same day, and a decent
9   percentage were not available for four or five days, you know,
10  after that.
11          We -- we have that listed in our -- in our papers.  I
12  won't go through those numbers specifically unless you would
13  like me to.
14          And we believe that there is an access right that
15  attaches at the time of submission of the complaint, and for
16  the Court to deny access requires a compelling reason and the
17  use of least alternative -- least restrictive means.
18          We think that the Court here, the clerk, has failed to
19  provide any compelling reason.  The only reason cited -- and
20  we -- we went back and forth with the clerk late last year
21  trying to get this resolved without the need of filing a
22  lawsuit, but the only reason that the clerk has really given
23  for the need -- the perceived need to process before providing
24  access is the risk of false information being published.
25          And our point is that, even if something changes post

1  submission, that what we would publish as of the day of the
2  submission would be accurate:  That such-and-such plaintiff
3  filed a lawsuit against such-and-such defendant and alleged the
4  following.
5         That's essentially the summary of the report.
6            THE COURT:  And the processing isn't changing the
7  complaint.
8            MR. GREINER:  And the processing isn't changing the
9  complaint.
10           THE COURT:  Okay.
11           MR. GREINER:  And, you know, in terms of the
12 responsibility or any duty with respect to the complaint, by
13 the Ohio Rules of Superintendence, that is placed on the filing
14 party to omit personal identifiers.
15        The clerk has no responsibility and no liability, you
16 know, if there is personal confidential information in a
17 complaint, by statute, by law.
18        And that really isn't what the clerk even said here.
19 The clerk never raised that -- that prospect.
20        So, yeah, it's unlikely, and we've not seen any data
21 from the clerk, in any of the back and forth that we had, that
22 said, you know, there was a large number of complaints that
23 changed, you know, radically after submission.  We think the
24 number would be minuscule.
25        We can't know that for a fact, but the processing that

6

1  the clerk used to do in a paper-filing world is basically now
2  done by the filing party.
3       If you go online to file a complaint in Franklin County,
4  you, the filing party, have to input most of the information.
5  You also have to pay.  You have to have an approved payment
6  system set up before that complaint can move forward, and that
7  is what the clerk used to do in terms of processing.  Most of
8  it has now been shifted to the filer, and so we don't think
9  there's any compelling need.
10      We also think that effectively putting a sealing order
11 over every complaint that is filed is not the least restrictive
12 means for dealing with this problem.
13      So that's basically our case in a nutshell.
14           THE COURT:  What -- I mean, it seems like you do have
15 a lot of kind of evidence.  You've got the statements, kind of
16 the statistical analysis.
17      You clearly have a lot of information in your materials
18 about the -- what system is it called?  The --
19           MR. GREINER:  Tybera.
20           THE COURT:  Tybera eFlex.  Do you need any discovery?
21           MR. GREINER:  That's a -- that's a good question, and
22 I anticipated that question.  I don't know what position the --
23 what position the clerk will take.
24           THE COURT:  Okay.  We'll find out in just a minute.
25           MR. GREINER:  Yeah.  Spoiler alert.

1         THE COURT: Spoiler alert.

2         MR. GREINER: But depending on if there's a challenge
3 to any of those factual assertions, then we might need to take
4 a deposition of the clerk.

5         THE COURT: Okay, okay. What time for the spoiler
6 alert?

7         MR. LANDES: I don't think we need discovery.

8         THE COURT: Okay.

9         MR. LANDES: But let me walk up to it if I could.

10        THE COURT: Yes, please.

11        MR. LANDES: So Franklin County follows the Rules of
12 Superintendence and so does the Supreme Court of Ohio.

13      So the Supreme Court of Ohio has exactly the same
14 practice, and they prescribe the same practice for all of the
15 clerks, for all of the 87,000 civil filings in Ohio last year.
16 And so this is not a challenge to MaryEllen O'Shaughnessy.
17 It's a challenge to all of the filings in Ohio.

18        THE COURT: I thought they said that Cincinnati and
19 Cleveland --

20        MR. LANDES: There may be some outliers.

21        THE COURT: -- Hamilton and Cuyahoga Counties, they
22 were able to get their same-day filings. Didn't you say that?

23        MR. LANDES: I'm rooting for them.

24      The -- the Rules of Superintendence, I believe, 44 and
25 45 is what tells the clerks what to do, and then the

1  Supreme Court Rule Section 3 says that they do exactly the same
2  thing, that they --
3        THE COURT: But the Supreme Court is a little bit
4  different, right? I mean, it's not -- Notice of Appeal is not
5  nearly as newsworthy as a new complaint, is it?
6        MR. LANDES: I don't know. I want to know more about
7  those than complaints probably if I've got a client involved,
8  so those -- I offer those to you.
9        Because it would be such an interference by the federal
10 court of the process of the state courts, the Seventh Circuit
11 has chosen abstention on this very case.
12       Courthouse News Service filed against Chicago, against
13 Cook County. They were granted a preliminary injunction at the
14 district court level, and it went to the Seventh Circuit.
15       The Seventh Circuit said this is such an interference by
16 the federal courts with the system of the state courts, the
17 state courts should have first shot at this, and they declined
18 to exercise federal jurisdiction, said it was error to have
19 done so at the district court level.
20       So our view is we don't need evidence, in part, because
21 we ought to take jurisdiction up first. It makes sense to take
22 up jurisdiction first. We can brief abstention.
23       THE COURT: Is jurisdiction intertwined with the
24 merits, or do you think it's something that can be addressed
25 separately?

9

1	MR. LANDES: I think separately.
2	THE COURT: Okay.
3	MR. LANDES: It's -- so the facts there would be --
4	well, I think I've just given you the facts.
5	THE COURT: Okay. But --
6	MR. LANDES: The rules -- the rules dictate this
7	process. And if this process is wrong, then a lot of places
8	are going to be wrong, and the Court will be a sort of de facto
9	"super clerk" telling them what to do, you know.
10	THE COURT: Do you have the cite for that Seventh
11	District case -- Seventh Circuit case?
12	MR. LANDES: I have the case.
13	THE COURT: Do you know this case, Mr. Greiner?
14	MR. GREINER: I know the case. It is an outlier,
15	Your Honor.
16	MR. LANDES: It is Seventh Circuit.
17	MR. GREINER: But it is -- it is in the distinct
18	minority.
19	MR. LANDES: There are cases that go his way. I
20	hereby yield.
21	THE COURT: So he knows his case.
22	MR. LANDES: So we just think abstention ought to be
23	taken up first. That keeps us from having to learn coding in
24	order to decide this case.
25	We don't have to figure out, you know, how do you code

1  stuff and how fast do you have --

2          THE COURT: Which you have not briefed yet, but at

3  least looking at the brief, I mean, I'll take it at face value,

4  which is what I have now, I don't think we have to learn coding

5  if we get to the merits.

6          It looks like the technology allows it, that there are

7  processes, including at our own court, that allows instant

8  access, so I don't think we have to learn coding.

9          MR. LANDES: No. If we -- if we don't have to follow

10 the Ohio Supreme Court Rules of Superintendence, we wouldn't.

11         If we don't do what they tell us to do, which is to only

12 mark it "filed" and not make it public to anybody until it's

13 actually filed, so -- and so -- so some of the language gets

14 tricky here.

15         Is it available the first day it's filed? It is,

16 because until it's reviewed, it's not filed because the Supreme

17 Court tells us that's how it is.

18         Is it effectively sealed until then? It's not sealed.

19 It's a matter of a reasonable amount of time to get there,

20 and -- and -- so if we get to the merits, if we get to whether

21 or not the First Amendment drives this, we've got a textual

22 argument that the Sixth Circuit tends to like, and we have a

23 First Amendment that says that you have the right of free

24 press, and we have a history that says that the First Amendment

25 is a check on government power, not a requirement for the

1  government to do something, and so we don't -- in part, we
2  don't have to deal with the facts because we say it's
3  eight hours.  Our business analyst says it comes out in eight
4  hours.
5       He says it's somewhat different than that, but he also
6  says that eight hours isn't fast enough anyway.
7       So it doesn't -- it doesn't matter for the plaintiff
8  whether it's eight hours or not, which gets to kind of a goofy
9  view of the law that the Constitution requires distribution of
10 stuff, not within a reasonable time, within eight hours.
11      You know, back in the days of paper, when you hand
12 somebody a complaint, and they go "kachunk, kachunk," and put
13 it in there, do they have a right to that before it even gets
14 the "kachunk, kachunk."
15      You know, how fast is fast enough in order to satisfy
16 the cravings of the plaintiffs for a free press?
17      We're not putting anybody in jail for criticizing
18 President Adams, you know, back in the day with sedition laws.
19 We're not taking the printing press away from people that we
20 don't like what we say.
21      They are asking from an affirmative action by the
22 government that isn't grounded in the text of a free press.
23      But if we abstain, we don't get there.  If we don't
24 abstain and we get there, that's what you would expect to hear.
25           THE COURT:  If we get there, though, so there is -- at

12

1  least what I think I hear you saying, though, is there will be
2  a factual dispute on -- on kind of the timing issue, of how
3  when these materials are available -- if we get to the merits.
4  That's the factual dispute.
5             MR. LANDES:  Yes.
6             THE COURT:  Do you dispute the information on the
7  technology about what the capabilities of the Tybera system do?
8             MR. LANDES:  We -- we --
9             THE COURT:  Can do, I should say.
10            MR. LANDES:  They were closed yesterday and so we
11 talked to them this morning.
12            THE COURT:  Okay.
13            MR. LANDES:  And I don't have a firm answer.
14            THE COURT:  Okay.  Okay.  Mr. Greiner, do you want to
15 respond on the -- kind of the jurisdictional issue?
16            MR. GREINER:  Yeah.  We've seen that, and Courthouse
17 News Service has seen the abstention argument raised in
18 virtually every case it's been involved in, including one
19 that's pending down in the Southern District in the Cincinnati
20 division, because there is a proceeding underway against the
21 clerk of Hamilton County --
22            THE COURT:  Oh, there is?  Okay.
23            MR. GREINER:  -- Common Pleas Court as well.
24       The *Brown* case from the Seventh Circuit is, as I said,
25 an outlier.  The Second Circuit, First Circuit, the Ninth

13

1 Circuit, have all ruled as such and found that this proceeding
2 does not fit into any of the *Younger* abstention buckets.
3     And if you read the Seventh Circuit opinion, it admits
4 that, but it kind of comes up with its own reason -- own
5 category for abstention which is --
6     THE COURT: Equity, comity, and federalism.
7     MR. GREINER: Yeah, which is the reason that the other
8 courts have not gone along with *Brown*. It is on an island.
9     But I understand that abstention -- you know, if this
10 Court lacks or declines jurisdiction, that does feel like the
11 first thing -- first things first. I mean, I can't -- I would
12 have a hard time disputing that, you know.
13     THE COURT: Okay.
14     MR. GREINER: But I would -- I would ask that if --
15 that that be part of the preliminary injunction proceeding, if
16 we can kind of fold that in, that's an issue that needs to be
17 addressed. I mean, if it's addressed first, that's fine.
18     I would like that not to inordinately delay the
19 proceeding itself.
20     THE COURT: If we get to the merits, can we
21 consolidate the hearing on the merits with the preliminary
22 injunction?
23     MR. GREINER: I think we can.
24     MR. LANDES: I do too.
25     I would -- my modest proposal was to file a motion to

14

1  dismiss on abstention within the 21 days that we would
2  otherwise respond to the motion for preliminary injunction and
3  then brief that.  And then if we have to argue about what free
4  press means, we can do that in short order.
5          THE COURT:  Since Mr. Greiner is only talking about,
6  even if there's a discovery dispute, wanting to do one
7  deposition, will you agree to let him do the deposition during
8  this period before they file their reply brief or response to
9  the motion to dismiss?
10          MR. LANDES:  I don't think he wants to.
11          THE COURT:  Do you want to do your deposition in the
12  next month?
13          MR. GREINER:  I would like to have that option.  Let's
14  put it that way.
15          THE COURT:  All right.  Well, I'll tell you what:  I
16  know Mr. Landes to be a cooperative attorney --
17          MR. GREINER:  Yeah.
18          THE COURT:  -- why don't you make your decision, and
19  if you two can work it out, great.  If you can't, let me know,
20  and I will make -- and I will hear any arguments about why or
21  why not the deposition should go forward.
22          MR. LANDES:  Yes, ma'am.
23          THE COURT:  I think that's fine.  Why don't you do
24  your motion to dismiss in the next 21 days.
25          Have you been served?  Is there -- there's not going to

15

1  service issues.  You'll accept service for --
2          MR. GREINER:  I think we did personal service.
3          THE COURT:  Okay.
4      What about mediating this case?  I mean, looking at some
5  of the materials that they cite, other courts have been able to
6  get it worked out without need for court intervention.
7          MR. LANDES:  Yeah.
8          THE COURT:  What about mediating it?
9          MR. LANDES:  Well --
10         THE COURT:  You are new to the case, and you have just
11 talked to your client today, but it seems like something that
12 -- this should be something that could be worked out.
13         MR. LANDES:  Maybe.  You know, I think it depends upon
14 whether or not the client has the ability to make some changes.
15     I mean, I thought just overnight about the plaintiff
16 gets a notice that has been received.  You know, if they get
17 that, but not the complaint, if we send that out, is there some
18 way to subscribe to that in the same way that you can subscribe
19 to PACER, you know?
20     Can you -- can we -- can they get the notice at the same
21 time plaintiff does, that in fact things have been received?  I
22 don't know if that solves the problem or not -- as opposed to
23 them getting it before the public does, because the defendant
24 hasn't had it yet when he wants it.
25         THE COURT:  And they didn't traditionally.  I mean,

16

1  when they were going down and looking at them in a stack, I
2  mean, I remember those days, when they had them there, you
3  remember them, some sitting there in the little cubicle, and
4  they were there, and that's -- that's what they did.
5       MR. LANDES:  Right.
6       THE COURT:  So -- I mean, okay, so the defendant
7  hasn't necessarily been served yet, but they never had when
8  they had that access.
9       MR. LANDES:  I know some places that take a
10 file-stamped copy of the complaint and give it to the press
11 before the defendant gets it.
12      THE COURT:  Yep.
13      MR. LANDES:  It makes for good press.
14      MR. GREINER:  That's what PACER does.  I mean, PACER
15 does.
16      THE COURT:  Well, to me, this is a case that ought to
17 be resolved.
18      If I have to rule, you know I will, and we'll enjoy
19 interesting First Amendment issues, but it just strikes me --
20 at least looking at the first brief, not seeing your
21 response -- that this is something that the technology is
22 capable of doing.  There's a way to do it.
23      If you want a mediator, I'm happy to see if one of our
24 magistrate judges are available or a retired magistrate judge.
25      Mr. Greiner, we have a couple of magistrate judges who

```
                                                            17
1    are on recall status here in Columbus that are good mediators
2    as well as our active judges.  And actually if we have Judge
3    Vascura on that, she's definitely one of our best mediators.  I
4    can always sic her on the two of you, but we'll -- we'll let
5    you all talk before then.
6            Anything else we ought to talk about today?
7               MR. GREINER:  I don't think so.  No.
8               THE COURT:  Okay.
9               MR. LANDES:  We talked about baseball before you came.
10              MR. GREINER:  Yeah.  That's what we were talking
11   about.
12              THE COURT:  Way more fun.
13              MR. GREINER:  Well, I appreciate you setting this so
14   quickly.
15              THE COURT:  Thank you.
16              MR. GREINER:  Much appreciated.
17              THE COURT:  Absolutely.  Thanks, counsel.
18         (Proceedings concluded at 2:15 p.m.)
19                             - - -
20
21
22
23
24
25
```

18

C E R T I F I C A T E

I, Allison A. Kimmel, do hereby certify that the foregoing is a true and correct transcript of the proceedings before the Honorable Sarah D. Morrison, Judge, in the United States District Court, Southern District of Ohio, Eastern Division, on the date indicated, reported by me in shorthand and transcribed by me or under my supervision.

s/Allison A. Kimmel
Allison A. Kimmel, FAPR, RDR, CRR, CRC
Official Federal Court Reporter
July 12, 2022