UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

**COURTHOUSE NEWS SERVICE,**

        **Plaintiff,**

                        :

     **v.**                         **Case No. 2:22-cv-2471**
                                     **Judge Sarah D. Morrison**
**MARYELLEN O'SHAUGHNESSY,**      **Magistrate Judge Chelsey M.**
**in her official capacity as Clerk**     **Vascura**
**of the Franklin County Court of**
**Common Pleas,**                  :

        **Defendant.**

## OPINION AND ORDER

This matter is before the Court for consideration of Plaintiff Courthouse News Service's Motion for Preliminary Injunction Against Defendant Maryellen O'Shaughnessy. (P.I. Mot., ECF Nos. 3, 3-1.) Ms. O'Shaughnessy opposed (Opp., ECF No. 28), and Courthouse News replied (Reply, ECF No. 33). For the reasons set forth below, the Motion is **GRANTED**.

## I.    FACTUAL BACKGROUND

Courthouse News is a nationwide legal news service that reports on new civil litigation in federal and state courts around the country. (Girdner Decl., ECF No. 3-3, ¶ 7.) Ms. O'Shaughnessy is the Clerk of the Franklin County Court of Common Pleas ("FCCCP"). She is responsible for the administration of court records at FCCCP, among other things.[1]  In 2011, Ms. O'Shaughnessy implemented FCCCP's

---

[1] Clerk of Courts, Maryellen O'Shaughnessy, https://clerk.franklincountyohio.gov/, (last visited March 20, 2023). *See Scarso v.*

electronic filing system. (Angione Decl., ECF No. 3-2, ¶ 20.) Her office's processes

and procedures related to that system are at issue in this litigation.

Prior to the implementation of the e-filing system, the public and press were

able to review newly filed, non-confidential, civil complaints (hereinafter referred to

as "complaints") on the same day they were filed. (*Id.* ¶¶ 8–12.) After the filer

submitted the complaint to intake with a filing fee payment, but before any

docketing, the public and press could access the paper complaint. (*Id.* ¶ 17; Girdner

Decl., ¶¶ 3–4, 22, 26–28.) The public and press did not have to wait for the

docketing clerks to review and enter case information on the docket. (Angione Decl.

¶¶ 15–20.)

In 2011, after FCCCP transitioned to using the e-filing system, software

replaced the intake clerk. (*Id.* ¶¶ 20–22.) This e-filing system is used at FCCCP

today. Filers are required to select options and fill in case information including but

not limited to the court division, case type and subtype, and document category and

type. (*Id.*) Filers also have to pay the filing fee prior to submitting the complaint.

(*Id.*)

Ms. O'Shaughnessy then withholds e-filed complaints until after a "Clerk

Review" is complete. (*Id.* ¶¶ 20–22; *see* Amended Eighth Administrative Order

("Administrative Order"), ECF No. 1-1, p.2.) The Administrative Order defines the

"Clerk Review" as:

---

*Cuyahoga Cty. Dep't of Human Services*, No. 89–4071, 1990 WL 169645, at \*2 (6th
Cir. Nov. 2, 1990) (district courts can take judicial notice of facts in the public
record).

**C. Clerk Review.** A preliminary review of electronically submitted documents by the Clerk in accordance with Court rules, policies, procedures and practices. Court clerks will preliminarily review the data and documents to ensure their compliance with Court rules, policies and procedures prior to accepting the documents and sending them to the Case Management System and Document Management System. If the submitted documents comply with the applicable Court rules, policies and procedures, they will be accepted by the Clerk for e-Filing. If the submitted documents do not comply with the applicable Court rules, policies and procedures, they will not be accepted for e-Filing and the Clerk shall notify the filer of the deficiency or problem with the submission.

. . . .

**E. Confidentiality or Confidential.** All documents submitted for e-Filing shall be confidential until accepted by the Clerk.

(*Id.*)

Ms. O'Shaughnessy asserts that this Clerk Review "serves an important function, which is to ensure that any submitted document complies with FCCCP rules for new filings and that the information that is disseminated to the public about court filings is accurate." (Muncy Aff., ECF No. 28-1, ¶ 5.) She provides examples: "a discrepancy between the names on the complaint and the names submitted by the filer electronically would cause the Clerk to misidentify a case or case participants"; "a discrepancy regarding the nature of the new case would result in the case being incorrectly categorized in the FCCCP's system"; and "[i]f a filer does not indicate that the new filing is [*sic*] refiled matter, the case will most likely be assigned to the wrong judge." (*Id.* ¶ 6.)

Courthouse News explains that because of this Clerk Review process, it has experienced regular delays in access over the past decade. (Angione Decl. ¶ 23.) From January 1, 2022, through May 31, 2022, it tracked complaints at FCCCP and

recorded the day of their filing and the day those complaints were made publicly

viewable. (*Id.* ¶ 24 PageID 272.) The following chart summarizes Courthouse News'

data during that time period[2]:

| Total Cases (All Cases) | | |
|---|---|---|
| Category | # of cases | Percent of Total |
| Zero Delay | 171 | 5.76% zero delay |
| One Day Delay | 1038 | 34.98% one day delay |
| Two Days Delay | 548 | 18.47% two day delay |
| Three Days Delay | 377 | 12.71% three day delay |
| Four Days Delay | 435 | 14.66% four day delay |
| Five to Ten Days Delay | 391 | 13.18% five to ten day delay |
| More Than Ten Days Delay | 7 | 0.24% more than ten days delay |
| Total Cases | 2967 | |

(*Id.*) Ms. O'Shaughnessy made available 5.76% of complaints to the public and press

on the day of filing, while 40.79% were withheld for three or more days. (*Id.*)

## II.    PROCEDURAL BACKGROUND

On June 13, 2022, Courthouse News filed its Complaint against Ms.

O'Shaughnessy in her official capacity, alleging violations of the First and

Fourteenth Amendments and 42 U.S.C. §§ 1983, *et seq.*, and seeking injunctive and

declaratory relief. (Compl., ECF No. 1, ¶¶ 15, 16.) Courthouse News alleges that

FCCCP's e-filing system delays publication thereby restricting the press's and

public's First Amendment qualified right to access complaints. (*Id.* ¶ 6.) Courthouse

News filed its Motion for a Preliminary Injunction on the same day as its

---

[2] The word "days" in the chart refers to calendar days. (Angione Decl. PageID 159–272.) An examination of the data indicates that even when examining court business days during the same time period, approximately 48% of complaints were delayed 2 days or more. (*Id.* PageID 159–276.) Ms. O'Shaughnessy does not challenge this data.

Complaint, moving the Court to enjoin Ms. O'Shaughnessy "from enforcing [her]

policy and practice of restricting press and public access to newly e-filed, non-

confidential civil complaints." (P.I. Mot. PageID 104.)

The Court conducted a conference pursuant to Local Civil Rule 65.1 on June

21, 2022, in which Ms. O'Shaughnessy raised jurisdictional concerns. (ECF No. 14.)

On the record, the Court stated it would resolve Ms. O'Shaughnessy's motion to

dismiss on jurisdictional grounds prior to setting a briefing schedule for and

addressing the Preliminary Injunction Motion. (*Id.*)

Ms. O'Shaughnessy's motion to dismiss argued that the Court should abstain

from exercising subject matter jurisdiction due to the equity, comity, and federalism

considerations underpinning the *Younger* abstention doctrine. (ECF No. 16); *see*

*Younger v. Harris*, 401 U.S. 37 (1971). The Court denied the motion, holding the

*Younger* abstention requirements were not satisfied. (ECF No. 20, PageID 584–86.)

The Court now turns to the Preliminary Injunction Motion, which is ripe for

review.[3]

---

[3] Because the parties did not request an evidentiary hearing in connection
with the Motion or identify any factual issues that a hearing would need to resolve,
the Court finds a hearing is unnecessary and will decide the Motion on the papers.
*See Hunter v. Hamilton Cnty. Bd. of Elections*, 635 F.3d 219, 246 (6th Cir. 2011) (a
hearing is not required "when the issues are primarily questions of law"); *Certified
Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 553 (6th
Cir. 2007) (a district court is not required to hold an evidentiary hearing before
granting a preliminary injunction "where material facts are not in dispute, or where
facts in dispute are not material to the preliminary injunction" (quotation marks
omitted)); *accord Caspar v. Snyder*, 77 F. Supp. 3d 616, 639 (E.D. Mich. 2015).

## III.    ANALYSIS

Federal Rule of Civil Procedure 65 governs the issuance of preliminary injunctions. "A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2002) (citing *Leary v. Daeschner*, 228 F.3d 729, 739 (6th Cir. 2000)). "The purpose of a preliminary injunction, unlike a permanent one, is to prevent any violation of the plaintiff's rights before the district court enters a final judgment." *Resurrection Sch. v. Hertel*, 35 F.4th 524, 528 (6th Cir. 2022), *cert. denied*, 143 S. Ct. 372 (2022) (quoting *Ohio v. EPA*, 969 F.3d 306, 308 (6th Cir. 2020)).

To determine the appropriateness of a preliminary injunction, the Court must examine four factors: (1) whether the plaintiff has established a strong likelihood of success on the merits; (2) whether the plaintiff would suffer irreparable injury if a preliminary injunction did not issue; (3) whether the injunction would cause substantial harm to others; and (4) whether the public interest would be served if the court were to grant the requested injunction. *Leary*, 228 F.3d at 736. Each of these factors "are to be balanced against one another and should not be considered prerequisites to the grant of a preliminary injunction." *Id.*

In the context of a First Amendment claim, however, the balancing of factors is skewed toward the first factor. As the Sixth Circuit has stated:

> [w]hen a party seeks a preliminary injunction on the basis of the potential violation of the First Amendment, the likelihood of success on

6

> the merits often will be the determinative factor. With regard to the factor of irreparable injury, for example, it is well-settled that "loss of First Amendment freedoms . . . unquestionably constitutes irreparable injury."

*Connection Distrib. Co. v. Reno*, 154 F.3d 281, 288 (6th Cir. 1998) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976) (plurality)). Accordingly, in cases like this one implicating the First Amendment, the other three factors often hinge on this first factor. "[T]he determination of where the public interest lies [ ] is dependent on a determination of the likelihood of success on the merits of the First Amendment challenge because it is always in the public interest to prevent the violation of a party's constitutional rights." *Id.* (internal quotation marks omitted).

### A.     Likelihood of Success on the Merits

The First Amendment provides a right of access to a judicial proceeding or record: (1) that "ha[s] historically been open to the press and general public"; and (2) where "public access plays a significant positive role in the functioning of the particular process in question." *Press-Enterprise Co. v. Superior Court ("Press II")*, 478 U.S. 1, 8–10 (1986). This test is known as the "experience and logic" test. *See id.* at 9. "If both experience and logic indicate that a judicial record has in the past, and should in the future, be afforded public access, a qualified First Amendment right of public access attaches to it." *Courthouse News Service v. Schaefer*, 2 F.4th 318, 327 (4th Cir. 2021). This presumptive right to access cannot be overcome unless the government demonstrates a compelling interest in restricting access and any

restriction is narrowly tailored. *See Detroit Free Press v. Ashcroft*, 303 F.3d 681, 705 (6th Cir. 2002).

### 1. Whether Complaints Have Traditionally Been Accessible to the Public and Press

Courthouse News contends courts have historically recognized a general right to inspect and copy public records and documents, and that right extends to civil complaints. (P.I. Mot. PageID 127.) Courts throughout the nation and Ohio (including FCCCP), Courthouse News explains, traditionally provided access to complaints on receipt, after intake but before processing. (*Id.* PageID 127–28; Girdner Decl. ¶¶ 22–25, Ex. 1; Angione Decl. ¶¶ 8–19.) Courthouse News provides examples of how boxes, bins, and mail baskets containing complaints were made available by intake clerks for the public and press at various courts including FCCCP, Cuyahoga County Court of Common Pleas, Hamilton County Court of Common Pleas, the U.S. District Court for the Northern District of Ohio, and this Court. (P.I. Mot. PageID 128; Angione Decl. ¶¶ 8–19.)

Ms. O'Shaughnessy counters that the e-filing system expanded access for both the public and press. (Opp. PageID 633–35.) Complaints "were not 'historically open to the press and general public'—rather, they were just historically open to a small group of people standing outside the Clerk's office." (*Id.* 635.) She reasons that the experience prong cannot be met if the requesting party is better off because of the protocol change. (*Id.*)

While the Supreme Court has concluded "that a presumption of openness inheres in the very nature of a criminal trial under our system of justice," *Richmond*

*Newspapers, Inc. v. Virginia*, 448 U.S. 555, 573 (1980), it has yet to explicitly rule on whether the First Amendment right to access "reaches civil judicial proceedings and records, but the federal courts of appeals widely agree that it does." *Courthouse News Serv. v. Planet*, 947 F.3d 581, 590 (9th Cir. 2020) (citing *Courthouse News Serv. v. Planet*, 750 F.3d 776, 786 (9th Cir. 2014) (collecting cases)); *see Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1177 (6th Cir. 1983) (holding that the First Amendment limits judicial discretion to seal documents in a civil case); *Detroit Free Press*, 303 F.3d at 695 n.11 (collecting circuit court decisions agreeing that public and press have First Amendment right to attend civil proceedings). These cases make clear that throughout history, an open courtroom and record have been "fundamental feature[s] of the American judicial system." *Brown*, 710 F.2d at 1177.

This caselaw and Courthouse News' evidence that state and federal courts throughout the nation and Ohio have traditionally provided access to complaints on receipt, lead the Court to conclude that complaints have been traditionally accessible to the public and press. (*See* Girdner Decl. ¶¶ 22–25, Exs. 1, 1a; Angione Decl. ¶¶ 8–19); *See also* Rule 45(A) of the Rules of Superintendence for the Courts of Ohio ("Court records are presumed open to the public"). Indeed, Ms. O'Shaughnessy offers no authorities or evidence to the contrary.

Rather, Ms. O'Shaughnessy argues that the public and press are "better off," but this argument obfuscates what is at issue in this case. It is no matter that only a "small group of people standing outside the Clerk's office" reviewed complaints as

9

soon as they were received by intake prior to docketing. Anyone could be part of

that group simply by showing up and could access complaints as soon as they were

filed. Of course e-filing has made it more convenient to access complaints, *i.e.* one

can do so from the comfort of his or her home, workplace, or library. But Courthouse

News' grievance is that access to the complaints is now delayed. It is significant

that—despite Ms. O'Shaughnessy's urging otherwise—anyone could historically

access a complaint if he or she so chose as soon as the intake clerk received it,

rather than waiting a day, or two or three or more, for it to be processed by a clerk.

*See Doe v. Pub. Citizen*, 749 F.3d 246, 272 (4th Cir. 2014) ("Each passing day may

constitute a separate and cognizable infringement of the First Amendment."). The

authority cited by Ms. O'Shaughnessy  does not support her "better off" argument.

## 2. Whether Public Access to Complaints Plays a Significant Positive Role in the Functioning of the Judicial Process

Courthouse News asserts that complaints should be subject to public scrutiny

because secrecy of complaints would eliminate one of the important checks on the

integrity of the system, while access enables free and informed discussion. (P.I. Mot.

PageID 129.) Filing a complaint, it argues, "invokes the authority of the courts, and

the American people have a right to know." (*Id.*) When a complaint "is withheld

from the public, it leaves the public unaware that a claim has been leveled and that

state power has been invoked." (*Id.*)

For her part, Ms. O'Shaughnessy contends the logic prong is not satisfied

because "public access to unfiled complaints has never played a role, let alone a

substantial one, in the clerk review process." (Opp. PageID 633.) She draws a

distinction between a court record and an unfiled document—"a right of access to court records exists. A right of access to unfiled documents does not." (*Id.*) She argues a document is not "filed" until it has been accepted and docketed by the clerk. (*Id.*) Courthouse News argues that filing occurs at the moment the document is received by a court. (Reply PageID 667.)

This Court concludes that public access to complaints plays a significant role in the functioning of the judicial process. The Fourth Circuit's discussion in *Schaefer* is adopted here:

> The Supreme Court has recognized that openness of the judicial process — especially through the press's reporting—"affords citizens a form of legal education and hopefully promotes confidence in the fair administration of justice." *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 572, 100 S.Ct. 2814, 65 L.Ed.2d 973 (1980) (plurality opinion) (quoting *State v. Schmit*, 273 Minn. 78, 139 N.W.2d 800, 807 (1966)). And access allows the public to "participate in and serve as a check upon the judicial process—an essential component in our structure of self-government." *Globe Newspaper Co. v. Superior Ct. for Norfolk Cty.*, 457 U.S. 596, 606, 102 S.Ct. 2613, 73 L.Ed.2d 248 (1982).
>
> It would be impossible for the public to perform this role adequately without access to nonconfidential civil complaints. "A complaint, which initiates judicial proceedings, is the cornerstone of every case, the very architecture of the lawsuit, and access to the complaint is almost always necessary if the public is to understand a court's decision." *Fed. Trade Comm'n v. Abbvie Prods*. LLC, 713 F.3d 54, 62 (11th Cir. 2013). Complaints are thus much like the docket sheets in *Doe*, to which we held the public has a First Amendment right of access. [*Doe v. Pub. Citizen*, 749 F.3d 246, 267 (4th Cir. 2014).] Because they allow the public to understand the parties involved in a case, the facts alleged, the issues for trial, and the relief sought, access to complaints, like access to docket sheets, is crucial to "not only the public's interest in monitoring the functioning of the courts but also the integrity of the judiciary." *Doe*, 749 F.3d at 266; *see also* [*Planet*, 947 F.3d at 592] (noting that "[p]ublic access to civil complaints . . . buttresses the institutional integrity of the judiciary.").

2 F.4th at 327.

Ms. O'Shaughnessy attacks the timing of attachment of the right to access, arguing a complaint is not filed until she says it is. But evidence in the record indicates that 40.79% of complaints were withheld for *three or more days*, where only 5.76% were available on the day of receipt. (Angione Decl. ¶ 24, PageID 272.) Ms. O'Shaughnessy does not attempt to discredit this evidence; rather, she offers that on average, complaints are available to the public within one or two days of receipt. (Muncy Aff. ¶ 9.)

Here too, the Court adopts the *Schaefer* Court's succinct explanation for why Ms. O'Shaughnessy's argument is meritless and the public and press have an important interest in reasonably contemporaneous access to complaints:

> [The argument that the logic prong does not require contemporaneous access to newly filed civil complaints] ignores the immediate consequences precipitated by filing a complaint, consequences that the public must promptly understand if it is to help "improve the quality of [the judicial] system by subjecting it to the cleansing effects of exposure and public accountability." *Nebraska Press Ass'n v. Stuart*, 427 U.S. 539, 587, 96 S.Ct. 2791, 49 L.Ed.2d 683 (1976) (Brennan, J., concurring). For example, a complaint instantaneously invokes a court's jurisdiction, *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 395, 110 S.Ct. 2447, 110 L.Ed.2d 359 (1990), and jurisdictional questions often implicate "the public's confidence" in judicial power, *Arizona Christian Sch. Tuition Org. v. Winn*, 563 U.S. 125, 133, 131 S.Ct. 1436, 179 L.Ed.2d 523 (2011). Moreover, a complaint carries significant implications for "the parties' substantive legal rights and duties," by, among other things, triggering an obligation to preserve evidence and, in some cases, triggering a statute of limitations. *Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 140 (2d Cir. 2016). This is especially true given that some complaints are withdrawn or cause the parties to settle before any judicial action is taken. *Accord* [*Planet*, 947 F.3d at 592.] The press and public thus have an important interest in reasonably contemporaneous access to civil complaints.

*Id.* at 327–28. *See also Courthouse News Serv. v. Jackson*, No. CIV A H-09-1844, 2009 WL 2163609, at *4 (S.D. Tex. July 20, 2009) (quoting *Grove Fresh Distribs.,*

*Inc. v. Everfresh Juice Co.,* 24 F.3d 893, 897 (7th Cir. 1994) ("[i]n light of the values

which the presumption of access endeavors to promote, a necessary corollary to the

presumption is that once found to be appropriate, access should be immediate and

contemporaneous . . . [t]he newsworthiness of a particular story is often fleeting. To

delay or postpone disclosure undermines the benefit of public scrutiny and may

have the same result as complete suppression . . . [E]ach passing day may constitute

a separate and cognizable infringement of the First Amendment.") (internal

citations and quotations omitted)); *Courthouse News Serv. v. Gabel*, No. 2:21-CV-

000132, 2021 WL 5416650, at * 14 (D. Vt. Nov. 19, 2021) ("[T]he focus must be on

whether ***any*** delay is appropriate because any restriction on the First Amendment

right of access must have 'sufficient justification.'") (emphasis in original);

*Courthouse News Serv. v. New Mexico Admin. Off. of the Cts.*, No. CIV 21-0710

JB/LF, 2021 WL 4710644, at *39 (D.N.M. Oct. 8, 2021) ("The qualified right

'attaches when the complaint is filed' in a traditional sense—when it is in the

court's possession."); *Courthouse News Serv. v. Tingling*, No. 16 CIV. 8742 (ER),

2016 WL 8505086, at *1 (S.D.N.Y. Dec. 16, 2016) (granting Courthouse News'

request for reinstating the tradition of timely access upon receipt).

Thus, both parts of the experiences and logic test are satisfied.

> **3.** **There is a qualified right of access to complaints and Ms.**
> **O'Shaughnessy's no-access-before-process policy violates**
> **the First Amendment.**

When a judicial record passes the experience and logic test, "a qualified First

Amendment right of public access attaches to it." *Schaefer*, 2 F.4th at 327. The right

may be curtailed only when "denial [of access] is necessitated by a compelling

governmental interest, and is narrowly tailored to serve that interest." *Detroit Free Press*, 303 F.3d at 705 (citing *Globe Newspaper Co. v. Superior Ct. for Norfolk Cnty.*, 457 U.S. 596, 606–7 (1982)). The presumption of access may be overcome "only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest." *Press II*, 478 U.S. at 9 (citing *Press-Enter. Co. v. Superior Ct. ("Press I")*, 464 U.S. 501 (1984)). The interest must be articulated "with findings specific enough that a reviewing court can determine" whether denial of access was proper. *Id.*

Ms. O'Shaughnessy asserts that the Clerk Review process is important because it ensures that complaints are compliant with FCCCP rules and that accurate information is disseminated to the public and press. (Muncy Aff. ¶¶ 5–7; Opp. PageID 630.) Otherwise, the press could report inaccurately and the public would be fed misinformation. (*Id.*) The Clerk Review process also prevents internal FCCCP system errors. (*Id.* ¶ 6.)

Courthouse News responds that Ms. O'Shaughnessy's no-access-before-process policy is not essential to preserve higher values and is not narrowly tailored. (P.I. Mot. PageID 134.) It argues Ms. O'Shaughnessy has cited no compelling authority to support her contention, and her concern that media could report inaccurate information causing irrevocable harm is meritless because Courthouse News reports truthful information based on real-time information and events from e-filers. (*Id.* PageID 134.) Courthouse News also asserts the Clerk Review process is overly restrictive in that Defendant makes every complaint confidential until a

14

clerk's review is complete. (*Id.* PageID 135.) Finally, it points to Rule 45 of the Rules of Superintendence for the Courts of Ohio which puts responsibility for including personal identifiers on the filing party, rather than the court or clerk, therefore making the Clerk Review process an overly cautious one. (*Id.* PageID 136.)

Ms. O'Shaughnessy has failed to provide sufficient reason for the Court to conclude the errors caught and prevented by her office's Clerk Review process create a compelling interest for delay. A complaint as-filed speaks for itself; if there are misspellings, grammatical errors, unartfully pled allegations, or discrepancies with filer inputs, the complaint as-filed remains a true representation of a party's pleading. The errors Defendant proposes to correct are administrative errors— discrepancies between the complaint and the FCCCP system, discrepancies between the complaint and the FCCCP categorization—the clerk does not change the complaint itself. Thus, even assuming a clerk's minimization of filer input mistakes lessens internal errors at FCCCP and confusion on the part of the e-filing end user, this is not an "overriding interest" that is "essential to preserve higher values." *Press II*, 478 U.S. at 9.

Ms. O'Shaughnessy has also failed to demonstrate that FCCCP's delays are merely "incidental" to the courts "administrative function that requires orderly processing of new filings." *See Planet*, 947 F.3d at 585. She offers no evidence that a one-, two-, three-, or more day delay in access (except in rare circumstances) is narrowly tailored to serve such an interest and that no less restrictive means of achieving that interest exist. *See Jackson*, 2009 WL 2163609, at \*4 (concluding the

same where there was a 24 to 72 hour delay in access); *Gabel*, 2021 WL 5416650, at *16 (finding defendants' pre-access review practice could not withstand constitutional scrutiny because they had failed to demonstrate it was "justified by higher interests and narrowly tailored to advance those interests"). Access and processing are not mutually exclusive. Certainly there are less restrictive means to accomplish Ms. O'Shaughnessy's goals than treating all complaints as confidential until accepted by the clerk. While the Court does not opine on their viability, Courthouse News suggests alternatives in its reply brief. (Reply, PageID 670.)

Accordingly, Courthouse News has established there is a substantial likelihood it will prevail on the merits.

### B.    The Threat of Irreparable Injury to the Plaintiff

Courthouse News will continue to suffer irreparable harm without injunctive relief because the "loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *See Elrod*, 427 U.S. at 373.

### C.    The Threat of Harm to Others

Courthouse News asserts the balance of hardships weigh in its favor because it would be denied its First Amendment right to access new complaints, and Ms. O'Shaughnessy has alternative ways to achieve her goals of rule compliance and accuracy without infringing on those that right. (P.I. Mot. PageID 138–39.) Ms. O'Shaughnessy argues throughout her brief that the public will be harmed by allowing complaints to be misfiled or filed with incorrect and inaccurate information. (Opp. PageID 635.)

16

For the reasons already discussed, the balance of hardships weighs in Courthouse News' favor where First Amendment rights are at stake.

### D.      The Public Interest

Injunctive relief will also serve the public interest because "timely reporting on the operations of the courts" is an important First Amendment interest. *Gabel*, 2021 WL 5416650, at * 14. Also, "it is always in the public's interest to prevent the violation of a party's constitutional rights." *Elrod*, 427 U.S. at 373.

## IV.     CONCLUSION

The Preliminary Injunction Motion (ECF No. 3) is **GRANTED**. Ms. O'Shaughnessy is hereby **ENJOINED** from restricting public access to newly e-filed, non-confidential, civil complaints until after such complaints are processed. Ms. O'Shaughnessy is **DIRECTED** to make such complaints available upon receipt. It is further **ORDERED** that, pursuant to Federal Rule of Civil Procedure 65(c), Courthouse News shall file with the Clerk of this Court a nominal bond of $1,000 as security.

**IT IS SO ORDERED.**

/s/ Sarah D. Morrison
**SARAH D. MORRISON**
**UNITED STATES DISTRICT JUDGE**